MARGARET A. QUINN, Appellant, v. SIMON VAN RAALTE et al.

Division Two, July 30, 1918.*

1. **EXCLUSION OF EVIDENCE: Not Offered or Preserved.** To preserve an available objection to the exclusion of testimony, oral or documentary, sufficient to authorize the granting of a new trial, it must appear that an offer of such testimony was made at the time.

2. ———: ———: **Materiality.** A new trial will not be granted for error in the exclusion of testimony when its materiality is in no manner apparent and its exclusion cannot affect the merits of the case.

3. **LOAN OR PURCHASE: Instruction: False Assumption: Contrary to Established Facts.** Where all the proof lends color to no other reasonable conclusion than that the transaction, by which plaintiff executed a note for $60,000 to defendants, for $40,000 in cash paid to her by them, that the title to certain land might vest in her, in accordance with her contract of purchase from the owners, it is not error to refuse to instruct that if defendants intended to advance her the money necessary to acquire the title, whether plaintiff elected to purchase it or not, and that she should have time to repurchase, then the transaction was not a loan. Since the evidence shows that the $40,000 was advanced that plaintiff might acquire the property, the giving of the instruction would have authorized the jury to act upon a nonexistent assumption.

4. **LOAN: Definition.** Every advancement of money, for the accommodation of another, to be repaid to the person making the advance, by the other or by any person for him, or by or out of his funds, is a loan of money. It is not necessary, in order to constitute a

*NOTE.—Certified to Reporter for publication May 5, 1919.

loan, that there should be in express terms an application to borrow or an agreement to lend. A loan is created whenever a contract is made whereby one party transfers to another a sum of money which the other agrees to pay absolutely, with such additional sums as may be agreed upon for its use.

5. **INSTRUCTION**: Embracing Whole Case. An instruction covering the whole case and negatively embracing all the legitimate legal defenses, is not erroneous, but is all that is required.

6. ——: **No Evidence.** An instruction which submits issues of which there is no evidence should be refused.

7. ——: **Singling Out Evidence.** An instruction which singles out a part of the evidence and gives to it a weight not justified by the law or facts, should be refused.

8. ——: **Confusing: Loan Note: Right of Purchaser: Reliance on Deed of Trust.** An instruction in a usury case that the assignee of a note may rely on the deed of trust securing it and the certificate of title, provided he did not have actual knowledge that the note was given for a loan of money, should be refused. Without that knowledge it was immaterial whether or not he relied upon such recitals. An instruction singling out such recitals and certificate gives them a weight not justified by the law, and is confusing.

9. ——: **Assumption of Controverted Fact.** An instruction should not assume as true a controverted fact. Where plaintiff's evidence tends to show that defendant's acquisition of a note was not a sale, instructions for defendant assuming that it was a sale should be refused.

10. **PERJURY: New Trial.** Where the testimony of plaintiff that one of the defendants had knowledge of the nature of the transaction is contradicted by them, and the verdict is for plaintiff, a new trial is not authorized on the ground that plaintiff committed perjury.

11. **NEW TRIAL: Absence of Prejudicial Error: Judgment for Plaintiff.** Where there is a verdict for plaintiff and the trial is free from prejudicial error, the question of whether there exists substantial facts authorizing a recovery still remains; but if such facts are established, an order granting defendants a new trial will not be upheld on appeal, but the case will be remanded with directions to reinstate the verdict.

12. **USURY: Necessity for Loan.** A loan is a necessary requisite to the existence of usury. Where plaintiff made a note for $60,000 for which only $40 000 was paid, and defendant acquired the note with knowledge of the facts which constituted the transaction a loan, and she afterwards paid the note in full, with interest, the transaction was usurious and she is entitled under the statute (Sec. 7182, R. S. 1909) to recover the excess payments.

Quinn v. Van Raalte.

13. ———: **Party in Interest.** Where plaintiff executed a usurious note and received title to a tract of land, a showing that she had a collateral agreement with her husband whereby he was to share in the proceeds arising from a sale of the land does not affect her status as the real party in interest in the suit to recover the usurious payments made by her.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. T. Jones,* Judge.

REVERSED (*with directions*).

*Glendy B. Arnold* for appellant.

(1.) Under the law and all the evidence the court would have been justified in peremptorily directing the jury to return a verdict for the plaintiff, as was requested by her at the close of the whole case. (2) Under the law and all the evidence the court would have been justified in peremptorily directing a finding by the jury that plaintiff's note was given for a loan of money, as was requested by plaintiff at the close of the whole case. (3) The instructions given on behalf of the plaintiff are correct declarations of law. (4) Where the maker gives his note for a loan the law conclusively presumes that he is the borrower and parole evidence is inadmissible to show that another, whose name does not appear on the note, was the borrower. Sparks v. Transfer Co., 104 Mo. 531; 17 Cyc. 589. (5) This action must be prosecuted "by the borrower." R. S. 1909, sec. 7182. (6) The term "borrower" in the usury law designates the party bound by the original contract to pay the loan. Wright v. Clapp, 28 Hun, 7, 8; Schermerhorn v. Talman, 14 N. Y. 126; Wheelock v. Lee, 64 N. Y. 247. (7) A suit to recover usury may be prosecuted in the name of the real party in interest or in the name of a trustee of an express trust without joining the real party in interest. A trustee of an express trust is one with whom or in whose name a contract is made for the benefit of another. R. S. 1909, secs. 1729, 1730. (8) "The test of the real party in interest, as respects defendant, is not found in the question whether plaintiff is the person

who is actually and substantially interested in the subject-matter of the action, but rather in the question whether a　recovery by the plaintiff will fully protect defendant in the event of another action upon the same case." St. James Co. v. Security Trust Co., 81 N. Y. Supp. 739, 178 N. Y. 560; 30 Cyc. 84. (9) Although a third person, not a party to the action, may be entitled to a portion of the fruits of the action or all the fruits, yet as against a defendant, a plaintiff is a real party in interest if he shows the complete legal title to the cause of action asserted, so that he can legally discharge the defendant from his obligation. Guerney v. Moore, 131 Mo. 650; Peters v. Railroad, 24 Mo. 586; 30 Cyc. 78, 84. (10) Where the wife sells her real estate for money, the transaction amounts to a purchase of the money with her separate means within the Married Woman's Act of 1875, and the same cannot be disposed of by the husband as his property without her consent in writing. Rogers v. Bunk, 39 Mo. 560. (11) In order to reserve an available objection to the exclusion of evidence, an offer must be made at the time showing what evidence will be given if the witness is permitted to answer and all of the facts necessary to establish its admissibility. Jackson v. Hardin, 83 Mo. 187; Ruschdeberg v. Railroad, 161 Mo. 70. (12) The exclusion of evidence will not work a reversal for a defendant where it appears that the evidence excluded would not establish the defense relied on. State ex rel. v. Leland, 82 Mo. 265; Kraxberger v. Porter, 91 Mo. 408. (13) Where an objection to testimony on untenable grounds is sustained, the exception will be overruled if the objection is sustainable on any other ground. 1 Wigmore on Evidence, sec. 18; Eschbach v. Hurtt, 47 Md. 61, 65. (14) Plaintiff's note was given for a loan of money. Burkitt v. McDonald, 26 Tex. Civ. App. 426; White v. Anderson, 164 Mo. App. 138; Wormley v. Hamburg, 46 Ia. 144; Sparks v. Robinson, 66 Ark. 460; Starkweather v. Prince, 1 MacArthur, 144; Heytle v. Logan, 1 A. K. Marshall, 529. (15) "The transaction itself, not the intention of the parties, determines the question of

usury." Osborne v. Payne, 111 Mo. App. 29; 39 Cyc. 920. (16) "If the transaction is a loan and the sum charged or exacted for the use of the money loaned exceeds the legal rate of interest, it is usury no matter what words it may be clothed in." White v. Anderson, 164 Mo. App. 132; Coleman v. Cole, 158 Mo. 253, 260; Kriebaum v. Yancy, 154 Mo. 67; Bell v. Mulholland, 90 Mo. App. 612; Talman v. Surety Co., 90 Mo. App. 274. (17) A holder who violates the civil and criminal provisions of the usury law cannot claim the rights of a holder in due course. Respondent violated the usury laws in his acquisition of plaintiff's note from his co-defendants. Hart v. Adler, 109 Ala. 467; Freeman v. Brittin, 17 N. J. L. (2 Har.) 191; Cook v. Pierce, 2 Houst. 499; 39 Cyc. 997; Van Schaach v. Stafford, 29 Mass. (12 Pick.) 565; Merchants & Planters Bank v. Scarrett, 77 S. C. 141. (18) The legal effect of Sec. 7182, R. S. 1909, is to render contracts, tainted with usury null and void to the extent of the usury. McDonnell v. Bldg. Assn., 175 Mo. 272; Montany v. Rock, 10 Mo. 506; Osborne v. Fridrich, 134 Mo. App. 449; Arbuthnot v. Bldg. Assn., 98 Mo. App. 388; Adler & Sons Col. Co. v. Corl, 155 Mo. 154; Ranson v. Hays, 39 Mo. 445; Corby v. Bean, 44 Mo. 379; Hennery v. Marksberry, 57 Mo. 399; Ferguson v. Soden, 111 Mo. 208. (19) Void provisions or portions of a contract confer no legal rights on the parties or their assigns. Comings v. Leedy, 114 Mo. 478; Erhardt v. Robinson, 78 Mo. App. 404; R. S. 1909, secs. 7182, 7183.

*Stern & Haberman, Ryan & Thompson, Morton Jourdan* and *Thomas M. Pierce,* for respondent.

(1) The court below was right in granting the new trial on the first ground assigned in its opinion, namely, excluding evidence to show plaintiff was not the real party in interest. Winslow Co. v. McCully Co., 169 Mo. 242; Weber v. Collins, 139 Mo. 507; Kelly v. Thuey, 102 Mo. 528; Hartzell v. Crumb, 90 Mo. 639; Higgins v. Dellinger, 22 Mo. 397; Williams v. Whitlock, 14 Mo.

560; Snyder v. Crutcher, 137 Mo. App. 130. The Mersman & Excelsior Company answer alleged that their transactions were with Quinn. The evidence as to real party in interest was, however, admissible under our general denial. Bolton v. Mo. Pac. Ry. Co., 172 Mo. 102; Greenway v. James, 34 Mo. 326. (2) The court properly granted a new trial for the second reason assigned in its opinion, namely, that the main instruction given for plaintiff was erroneous, in that it did not sufficiently cover the defendants' case though it undertook to cover the entire case, no instruction covering Van Raalte's side having been given. Enloe v. Car and Foundry Co., 240 Mo. 449; Jones v. Jones, 57 Mo. 142; Fine v. Public Schools, 39 Mo. 67; Sawyer v. Railroad, 37 Mo. 263; Hohstadt v. Daggs, 50 Mo. App. 240; Hayner v. Churchill, 29 Mo. App. 676; Bolland Co. v. Williams, 164 Fed. 668. (3) The contention that the court should have directed a verdict for appellant against respondent has no merit in law or on the facts. (a) Upon the credible oral, and the undisputed documentary, evidence the plaintiff failed to sustain her burden as to this respondent; (b) That if the court should hold she made (if the real party) a prima-facie case against this respondent, the case was bound to go to the jury and in no event was she entitled to a directed verdict. Stewart v. Outhwaite, 141 Mo. 573; Barker v. Publishing Co., 152 Mo. App. 722; Bank v. Hammond, 124 Mo. App. 181. (4) The transaction between Quinn and the Excelsior Company & Mersman was a legitimate purchase by the company and re-sale; there was no usury. Long v. Israel, 19 Va. (9 Leigh) 556; Farmers Loan & Trust Co. v. Smith, Clarke's Chancery (N. Y.) 540; Graeme v. Adams, 23 Grattan, 234; Bank v. Waggener, 9 Peters, 399; Hogg v. Ruffner, 1 Black, 118. (5) Respondent was a holder in due course for value, hence protected in his ownership of the note even had there been usury in the transaction between Quinn and the Excelsior Company. Appellant abandoned her count charging respondent as a lender of the money, and sought to hold him as a transferee of the

note. Schlesinger v. Lehmaier, 191 N. Y. 73; Cromwell v. County of Sac, 96 U. S. 59. The note was not void, as contended by appellant, even though there was usury in its inception. Coleman v. Cole, 158 Mo. 260; Adler Co. v. Corl, 155 Mo. 154; Bank v. Harrison, 57 Mo. 503. No mere suspicion, or knowledge of circumstances that would excite suspicion, or indeed gross negligence on the part of a buyer of negotiable paper at time of purchase, will affect the rights of a transferee for value before maturity. There must be *mala fides*. Mayes v. Robinson, 93 Mo. 122; Hamilton v. Marks, 63 Mo. 171; 39 Cyc. 1078. (6) The court should have granted the new trial because of: (a) The refusal of respondent's instructions; (b) Respondent's theory of the case having been quite ignored by the refusal of his instructions. King v. Wabash Railroad, 211 Mo. 15; Wilmot v. Corrigan Co., 106 Mo. 549; Ridins v. Ridins, 29 Mo. 470; Bruce v. Wolf, 102 Mo. App. 390; Kraft v. Mc-Boyd, 32 Mo. App. 399. (7) The purchase of a note from an endorsee at a discount is not usury. Secs. 9997, 10022, 10026, R. S. 1909; Coleman v. Cole, 158 Mo. 260; State ex rel. v. Boatmen's Savings Institution, 58 Mo. 193; Durant v. Banta, 27 N. J. L. 632; Sherman v. Blackman, 24 Ill. 345; 39 Cyc. 932-934. (8) The court should have granted the new trial because of perjury committed by the witness Quinn in testifying he visited Van Raalte twice in May, 1909, in company with Mersman.

WALKER, J.—This is an action based on Section 7182, Revised Statutes 1909, to recover for usury. It arises out of a real estate transaction between the plaintiff and the defendants, Simon Van Raalte, Otto L. Mersman, and the Excelsior Realty Company. The amount sued for, with interest, is $21,000. A trial before a jury resulted in a verdict against the defendant Van Raalte for $21,000. A motion for a new trial was granted, and from that order the plaintiff appeals.

At the close of the trial the plaintiff, in obedience
to a ruling of the court, elected to stand on the second
count of her petition and dismissed as to the first count.
The second count is, in substance, as follows:

After a formal averment as to the corporate charac-
ter of the Excelsior Realty Company, it is alleged that
on the 25th day of May, 1909, plaintiff borrowed forty
thousand dollars from defendants Mersman and the Ex-
celsior Realty Company, and, as a consideration there-
for, gave them her promissory note for sixty thousand
dollars, payable in six months after date, with interest
at the rate of six per cent per annum; that, for con-
venience, the note was made payable to Ralph W. Coale
and endorsed by him without recourse, and was delivered
to defendants Mersman and the Excelsior Realty Com-
pany; that, on the 27th day of May, 1909, the defend-
ants transferred said note to their co-defendant, Simon
Van Raalte, and that said Van Raalte acquired the
same with knowledge that the note was given for a loan
of only forty thousand dollars; that on March 29, 1910,
plaintiff paid Van Raalte the principal and interest of
said note amounting to $61,200. Judgment for $21,000,
with interest, is prayed for.

The answer of the defendants, Mersman and the Ex-
celsior Realty Company, is in two counts, presenting
substantially the same defense. We are concerned in
this review only with the second count.

It is averred that James J. Quinn, the husband of
plaintiff, on or about May 1, 1909, procured an option
to purchase, on or before May 31, 1909, for $140,000, a
tract of land in St. Louis County, containing about 43
acres, and known as the "Forsyth tract," lying between
the Washington University grounds and the city of
Clayton; that Quinn bought this option on a speculation,
and being unable to pay the balance of the purchase
money, $39,000, within the time prescribed, induced the
Excelsior Realty Company to buy the option from him,
with the understanding and agreement that if the Ex-
celsior Company bought the land under the option it
would sell it to Quinn for the advanced consideration

of $160,000, payable upon the assumption by Quinn of two deeds of trust on the land for $50,000 each, and the balance in cash or notes satisfactorily secured, payable in six months; that Quinn was given a five-day option in which to buy the land from the Excelsior Realty Company, but was not obligated to do so; that Quinn was merely given an option to buy, while the Excelsior Realty Company bound itself for five days to sell to Quinn, in the event it bought the land under his option; that the Excelsior Realty Company bought the land under the option and sold it to Quinn, and that the conveyances were effected through Ralph W. Coale, as agent of the Excelsior Realty Company; that the land belonged to James J. Quinn, and that certain other property on which a deed of trust was given to secure plaintiff's note also belonged to Quinn; that prior to Quinn's exercising his option to buy said land, no negotiations had been had between plaintiff and the Excelsior Realty Company or Otto L. Mersman, and that she was unknown to them; that Quinn directed that the papers be prepared in the name of Margaret A. Quinn, his wife, because of a law suit which he said was pending against him, or was about to be brought.

Defendants deny that they loaned plaintiff any money and aver that plaintiff's note "merely evidenced money due from the maker thereof on account of the purchase price of the property."

The answer of the respondent, Van Raalte, to the second count of the petition is a general denial and pleads that he was a holder in due course of plaintiff's note and that the same was not given for a loan of money. He does not plead the defense that plaintiff's note was given for a loan, but to evidence "money due from the maker thereof on account of the purchase price of the property."

None of the defendants pleaded that the plaintiff was not the real party in interest, or that there was a defect of parties plaintiff.

The reply was a general denial.

The contention of the plaintiff is that her husband's connection with this entire matter was as her representative, and that the contract of purchase was obtained by him for her. The contention of the defendants is that she was not the real party in interest.

James J. Quinn, husband of the plaintiff, on the 29th day of April, 1909, entered into a written contract, with the agent of the owners of the Forsyth tract, whereby the latter agreed to sell and the former to purchase said tract of land for the sum of $140,000, to be paid as follows: Forty thousand dollars in cash, one thousand dollars of which was paid, as earnest money and part purchase money, upon the execution of the contract of sale, and the balance, $39,000, on or before May 31, 1909, purchaser to execute second deed of trust for $50,000, maturing March 31, 1910, and assume payment of an existing first deed of trust for $50,000, maturing April 30, 1910.

After attempting to interest a number of others in this deal Quinn, the plaintiff's husband, was introduced to Mersman by Ralph W. Coale—Coale and Mersman then having offices in the real estate office of Cornet & Zeibig. Quinn at first sought a loan of Mersman of $39,000, which the latter refused to consider. Quinn then besought Mersman to buy the land for him, and after numerous conferences Mersman finally agreed to do so. In his direct examination Mersman testified on this point as follows:

"Quinn told me he had an option on the Forsyth property for $140,000 and he wanted to know if I would buy the property for him, or lend him the money to buy it, or make some deal with him by which he could avail himself of the option. I found him in my office every morning, and the final result was his giving me the option, assigning it to me or my agent, and my buying the property for him for $140,000. No question of my loaning him money to purchase was ever considered. It was asked for. The last proposition made by him was that he would assign the option to me if I bought the property, and he would buy the property back

at $20,000 profit, if I would give him six months to pay for it, and he would give me what additional security he could dig up besides. That was his own suggestion, and we made a memorandum of that at the time. When we made our final arrangements, Quinn said to me: 'I cannot handle this property in four days, but if I had six months I could make $75,000 or $100,000 on it.' I agreed with him, and I said: 'All right, we will go ahead. I will buy it for you and sell it to you, and then you go ahead and make the balance,' and on the strength of that we drew up the memorandum of the agreement made at the time we came to this understanding. We were sitting at my desk together, at one of the later numerous conferences, when the memorandum was made. It is as follows: 'I'll buy the property at $140,000, and sell it to you for $160,000. You to take it subject to $100,000 and I'll take your note for $60,000 secured by mortgage on the Forsyth tract and that on Ninth and Morgan and on 2735 Laclede Avenue, Laclede clear. Ninth and Morgan subject to $36,000. Said $60,000 mortgage to be payable on or before six months at 6 per cent.' This memorandum must have been two or three days before the check was delivered to Rohan, the Secretary of the Title Guaranty Co. Quinn repeatedly asked me to buy the property for him, etc. He made me numerous propositions. The last one was exactly in accordance with the memorandum I wrote down at the time. He kept asking me to buy the property for him, and telling me about the profit we could make or he could make on it if he had it. I didn't like to buy the property and held back ten days before I did.''

After making the foregoing agreement, the transaction was consummated in the following manner: On the 25th day of May, 1909, the Excelsior Realty Company, acting through Mersman, its president, delivered to Rohan, the secretary of the Title Guaranty Trust Company, a treasurer's check of the St. Louis Union Trust Company for $40,000, with instructions to pay it

out in accordance with the terms of the following written receipt, to-wit:

"St. Louis, Mo., May 25, 1909. Received of Cornet & Zeibig, Agents for the Excelsior Realty Company, Treasurer's Check No. 38693, of the St. Louis Union Trust Company, for $40,000, payable to the Title Guaranty Trust Company, to be used in the consummation of the sale of property in United States Survey 378, and conveyed by the Quality Realty Company to Ralph Coale, and by the said Ralph Coale to Margaret A. Quinn and also for the purpose of perfecting the titles to the said property and other properties owned by Margaret A. Quinn and carrying out the purposes set forth in directions from Otto L. Mersman. This money to be used when all papers are found to be satisfactory to this Company and to Henry L. Cornet.

"Title Guaranty Trust Company,

"By Jas. M. Rohan, Secretary."

This receipt was given by the Trust Company at the time it received the check therein mentioned.

As to Mersman's instructions to the Trust Company concerning the disposition of the $40,000 delivered to it, he testified as follows:

"After we had agreed on the deal Henry Cornet and I went to the Trust Company and gave Rohan the check and told him to close it up if it was in proper form. I meant if the option was properly assigned and the other people made a deed and they had good title and there was no judgments against the property. If everything was clean and square to clean it up. That is the usual way of closing those deals, where the money has to be paid to different people, we give the money to Rohan and he passes it out only when he is satisfied everybody in interest has a good title and there are no judgments and everything is valid for a perfect title."

On the 25th day of May, 1909, the Quality Realty Company, owner of the tract, executed and delivered its general warranty deed, conveying the land to Ralph W. Coale, and on said date, Coale executed and delivered his personal note for $50,000, with interest notes,

and a deed of trust on the land, to secure said notes. On the 25th day of May, 1909, Coale executed his general warranty deed, conveying the land to the plaintiff. On the 25th of May, 1909, plaintiff executed and delivered her note to Ralph W. Coale in words as follows: "$60,000 St. Louis, Mo., May 25th, 1909. On or before six (6) months after date I promise to pay to the order of Ralph W. Coale, Sixty Thousand Dollars. For value received, negotiable and payable without defalcation or discount at the office of Cornet & Zeibig, St. Louis, with interest from date at the rate of 6 per cent. per annum, secured by Deed of Trust of even date." And on the 27th of May, 1909, plaintiff executed and delivered her deed of trust on said land, and another deed of trust on certain city property belonging to her, securing her said note to Coale.

On the 27th day of May, 1909, all of the aforesaid deeds and notes were in the possession of the Title Guaranty Trust Company, and on that date the Trust Company paid out the $40,000, as directed by the Excelsior Realty Company, and the Title Guaranty Trust Company recorded the deeds and the deeds of trust. Thus the title to the land was passed from its owner to the plaintiff.

On the 27th of May, 1909, plaintiff's note was endorsed by Ralph W. Coale, without recourse, and it and the recorder's receipt for the deed of trust securing the note was delivered to Mersman. So, also, on said date, Coale's note to the Quality Realty Company for $50,000, and its interest notes, and the deed of trust securing same, were delivered to the Quality Realty Company.

Plaintiff admitted that she received back from the Quality Realty Company the $1000 she had paid as earnest money on a contract made by her husband April 29, 1909, for the purchase of the Forsyth tract from the Quality Realty Company, the owner of said land.

Mersman and the Excelsior Company relied upon the contract made by Coale with the plaintiff's husband, to establish the fact that her note was not given for a loan of money. This contract is as follows:

"My dear Mr. Quinn: I will pay you $100 cash for your option to buy for $140,000 the land in St. Louis County near the Washington University about which we have spoken and upon which there is a deed of trust for $50,000. I agree that if I purchase the land under that option, I will give you or your assigns, the privilege of buying the land from me at any time five days after I get the deed, for the price and sum of $160,000. If you or your assigns buy the land from me, you or your assigns will assume the first deed of trust for $50,000, that I am going to put on the land and pay the balance of $60,000 either in cash, or at your option, in deferred payments running six months, secured in a manner satisfactory to me.

"Very respectfully, Ralph W. Coale.

"Accepted this 27th day of May, 1909, James J. Quinn.

"Witness to both signatures, Otto L. Mersman."

The respondent, Van Raalte, did not make the defense that Quinn's contract established the fact that the plaintiff's note was not given for a loan of money. In his answer and in his counsel's opening statement, all knowledge of this transaction with Quinn is disclaimed.

The foregoing contract with Quinn was made on the 27th day of May, 1909, two days after Mersman had delivered to the Title Guaranty Trust Company the treasurer's check for $40,000, with instructions referred to above, and two days after the Quality Realty Company had executed and delivered its deed conveying the title to Coale, and two days after plaintiff had executed and delivered her note, and one day after Coale had executed and delivered to the Trust Company his personal note for $50,000 and a deed of trust securing it, and one day after Coale had executed and delivered his deed to the Title Guaranty Trust Company conveying title of the land to plaintiff.

At the date of the execution and delivery of the foregoing contract with Quinn, the deal was therefore closed so far as Mersman and the Excelsior Realty

Company were concerned.   Prior to its execution the Excelsior Realty Company had parted with its money, with instructions to pass title to the land to plaintiff, and the Quality Realty Company had parted with its title to the land to Coale and the latter had transferred the title to the plaintiff; and plaintiff had delivered her note for $60,000. The only acts of any of the parties in consummation of the deal on the date the above contract was signed were the acknowledgments of plaintiff's deeds of trust securing her notes.   These facts are, plaintiff contends, shown by the documents which constituted the links in the respondent, Van Raalte's chain of title to his sixty-thousand-dollar note, and the deeds of trust securing it.   These documents were not challenged at the trial by any of the parties—their accuracy and authenticity being conceded.

The following testimony from the direct examination of Mersman shows the conditions under which the foregoing contract was drawn and executed:   "In a general way I remember the conversation with Quinn at the time he signed the contract.   I told him this was the way we wanted it, and he signed it; that we wanted to make the deal this way.   Quinn said to me, 'I cannot handle this property in four days, but if I had six months I could make $75,000 or a $100,000 on it,' and I knew he could if we didn't have a panic.   I agreed with him and said, 'All right, we will go ahead.   I will buy it for you and sell it to you, and then you can go ahead and make the balance,' and on the strength of that we drew these deeds and plaintiff's note."

On cross-examination, Mersman said: "I didn't see any written assignment on plaintiff's contract with the Quality Realty Company, the holder of the title to the Forsyth tract, assigning the option to me.   I don't know of Quinn ever giving me a written order to this Realty Company, assigning the contract to me, and its consent to it.   I did not know this Realty Company had anything to do with the option of the plaintiff to purchase the land.   I do not think I ever saw plaintiff's

contract with the Quality Realty Company. I never paid Quinn the $100 mentioned in that contract.''

Quinn, plaintiff's husband, testified that he signed the contract of May 27, 1909, with Ralph Coale, to please Mersman, after the matter of the purchase of the land had been fully consummated.

Plaintiff's testimony is as follows:

''I am the plaintiff, and the wife of James J. Quinn. I recall the transaction between Mr. Mersman and my husband concerning the Forsyth tract of land. I bought that property. I authorized my husband, and he represented me in its purchase. We went out and looked at it in April, 1909. I signed the note for $60,000, given to Ralph W. Coale, as a part of the purchase money for this land, and executed and acknowledged the deed of trust on the land to secure the payment of that note. I let my husband have $1000 of my own funds to pay as earnest money in this transaction. In all of these matters, except the signing of the notes and the executing of the deeds of trust, which I did myself, my husband represented me. I don't remember the exact date when I gave my husband the check for the $1000. It was at the time on deposit to my credit in the Third National Bank. My husband had no authority to draw upon my individual account. I am not in the real estate business. My husband is. I met Mr. Mersman when I signed the papers. Before that time I had not known him. I met Mr. Van Raalte since that time. If I remember correctly, Mr. Mersman was present when I signed the papers. I don't remember whether my husband was present or not. I only met Mr. Mersman once in connection with this matter. I never had any conversation with him about how this property was to be handled, or how I was to purchase it. I don't know that I have the check for the $1000 I gave my husband which he paid as earnest money for the purchase of this land. I think I got the check back after it was cashed. I don't remember whether it was indorsed or not. I did not see my husband pay it out. I just gave him the money to invest for me. I know he paid it on the deal, be-

cause he got the tract in my name. He got an earnest-money contract for me for the Forsyth tract from the Quality Realty Company. I am not certain whether this contract was in my name. I let Mr. Quinn act for me entirely through all that. I did not see the contract. Mr. Quinn attended to it. I was in the habit of giving him money, and having him buy property for me. I knew the details of the trade so far as my husband came home and told me about them. He told me about the investing of the money in the Forsyth deal. I bought the property for the purpose of reselling it. The property was not laid out in lots. It was subsequently sold after it had been subdivided. My husband was handling this tract for me during the greater part of the fall of 1909 and the spring of 1910. He attended to it for me. I did not give him any part of the profit or any part of the land. I never had any part of my property in his name. I never referred to any part of this property as belonging to him and me. It was my own. I signed a contract with the Title Guaranty Company involving this property. My husband signed it with me. I acquired the property I now own on Morgan Street in 1904, and that I now own on Laclede Avenue in 1903. My husband never had any interest in these pieces of property. The greater portion of the Forsyth tract was finally sold. I own some pieces of it now. My husband has no interest in them. Other than the $1000 paid out for me by my husband, I borrowed the other money I put into the deal and executed notes and the deed of trust on the property to secure its payment. I subsequently borrowed money to pay the interest on this note. I don't think at the time of the execution of the note and deed of trust I got back my $1000 I had paid out on the deal. I don't think I got it back in May, 1909. I was not present when any money was paid on this deal. I did not receive personally $39,000 or $40,000 from either Mr. Mersman or the Excelsior Realty Company or Mr. Van Raalte. Mr. Quinn attended to that for me. I don't remember how this money was paid. Of my own knowledge I don't

know how the $60,000 note was paid. I only know by the statement of the Title Guaranty Trust Company that they paid it. The note and deeds of trust are the only papers I signed in connection with this transaction for $60,000. I never signed the check in payment of this note.

"I never met Mr. Van Raalte until after this suit was filed. I never personally received any money from him. Mr. Quinn attended to the entire matter, and entered into the contract for the purchase of the property, and made the agreement to pay up the $1000 as earnest money to bind the bargain. I knew about the contents of this agreement. My husband told me about the property, and I gave him the $1000 to pay on it. I did not have the $39,000 to pay in cash on the 31st day of May, as required by that agreement, and my husband, so far as I knew, did not have that amount of money. He was not a man of any means. I remember signing the contract of the Title Guaranty Trust Company and the American Trust Company. I don't remember the details, but these companies furnished whatever funds were necessary for the Forsyth transaction. The Title Guaranty Trust Company never called on me for any money to be used in that transaction."

The respondent Van Raalte's answer admits that he bought plaintiff's $60,000 note of the Excelsior Realty Company on the 29th day of May, 1909, and that he paid that Company $50,000 for same; that the full principal and interest of said note were paid to him by the Title Guaranty Trust Company on March 29, 1910.

James Rohan, secretary of the Title Guaranty Trust Company, testified that his company paid respondent Van Raalte with a check of the American Trust Company, the principal and interest due on plaintiff's note; that the Title Guaranty Company repaid the American Company on the 1st of April, 1910, with a check against the account of the plaintiff; that his company had an interest in the plaintiff's account, but not in the money that was paid to respondent Van Raalte. A canceled check of the American Trust Company, dated the 28th

of March, 1910, for the sum of $61,230, payable to and indorsed by respondent Van Raalte, was offered in evidence.

The respondent Van Raalte testified that at the time he purchased plaintiff's note, he knew nothing about the transaction between plaintiff and her husband on the one hand and the defendants Mersman and the Excelsior Company on the other; that Mersman told him he had a deal on, but did not tell him the details; that he never knew or heard of James J. Quinn until about nine months after he became the owner of plaintiff's note; that he never knew and had never seen Mrs. Quinn until after this suit was brought; that before purchasing the note, he examined the certificate of title and plaintiff's deeds of trust, and relied solely upon the certificate of title. The certificate of title was offered in evidence, and contains recitals to the effect that the plaintiff was the owner in fee of the Forsyth tract, subject to three deeds of trust, two for $50,000 each and one for $60,000; that the third deed of trust was given "to secure part of purchase money, one note for $60,000, payable on or before six months after date, with interest from date at six per cent per annum."

James J. Quinn, plaintiff's husband, testified that about the 21st of May, 1909, he and Mersman called on Van Raalte and discussed with the latter the proposition that Mersman and Van Raalte put up the money for the purchase of the land; that after discussing the matter with Van Raalte, the latter told him that the proposition would be all right and for him to go ahead and figure with Mersman. Van Raalte and Mersman deny Quinn's statements as to this interview.

Mersman testified that before he sold respondent Van Raalte plaintiff's note, he told him the facts relating to the execution of same. The evidence of respondent Van Raalte and Mersman shows that the former furnished one-half of the loan to the plaintiff. The respondent and Mersman testified that respondent loaned Mersman, without security, on the 25th day of May, 1909, $20,000, which Mersman repaid him on the 29th

of May. Mersman also testified that he used this money in purchasing the Forsyth tract for the plaintiff. Respondent Van Raalte said that he did not know what Mersman was going to do or did with the money, and that Mersman did not tell him, and he did not ask him. Mersman was a man without a bank account at the time respondent loaned him $20,000 without security. Respondent, as shown by his testimony, bought the note from Mersman at the discount of $10,000, within less than two days after it was delivered to Mersman. Before respondent agreed to purchase the note he insisted that the Excelsior Realty Company indorse it and that Mersman, who did not own the note, also indorse it personally, which he did.

The transfer of the title to the land in question to Ralph W. Coale as an agent or intermediary of the Excelsior Realty Company is admitted by Judge Moses N. Sale, one of the counsel for the respondent, in a memorandum filed by him in support of the motion for a new trial. It is pertinent as illuminative of the purpose of the transaction. Judge Sale's statement is as follows:

"I pause to say that there is not a single statement contained in that portion of the instruction [plaintiff's first] that has any bearing upon the real issue that should have been submitted to the jury, because it was admitted, so far as Mersman is concerned, that his intention and his agreement was to carry out a certain trade or contract whereby Quinn would get the title to the Forsyth tract, etc.

"It must also be admitted, for we cannot dispute the fact, that it was the intention of Mersman and his company and the intention of Quinn to do what they had agreed to do, and that was to get the title to this Forsyth tract out of the Quality Realty Company into Quinn, or his nominee. The transaction has no other color than this.

"This portion of the instruction [plaintiff's first] is absolutely in the teeth of all the undisputed evidence, because the record evidence in the case shows it was the express purpose on the part of the Excelsior Realty Company and Mersman that Coale should become the

ostensible purchaser of the property, but should purchase it in accordance with the terms of the contract that Mersman had made with Quinn, purchase it so that Mersman's company could control it, and purchase it for the purpose of getting the title in Quinn, or his nominee.''

A contract between the Quinns, husband and wife, with the Title Guaranty Trust Company and the American Trust Company, which was in the possession of the former, and provided for the. sale by auction of the Forsyth tract, was required by respondent to be produced and was read in evidence. Counsel for respondent admitted in demanding the admission in evidence of this contract, as is disclosed by its face, that plaintiff was the real party in interest in this transaction.

The court gave the following instructions on behalf of the appellant:

''1. If the jury believe and find from the evidence, in this case, that, on or about the 29th day of April, 1909, the plaintiff and the Quality Realty Company entered into the contract for the sale of the land described in said contract; and, that the Excelsior Realty Company, on or about the 25th day of May, 1909, at the instance and request of the plaintiff, paid to the Quality Realty Company the sum of $40,000, as part of the purchase price of said land; and, that upon the payment of said $40,000 as aforesaid, said Quality Realty Company, at the instance and request of the plaintiff and the Excelsior Realty Company, conveyed its equity or interest in said land to one Ralph W. Coale subject to a then existing deed of trust on said land to secure the payment of $50,000, with interest thereon, and that thereupon said Ralph W. Coale, at the instance and request of the plaintiff and the Excelsior Realty Company, and as a further consideration for said conveyance to him, as aforesaid, executed and delivered to one John Boyle, as trustee, a second deed of trust on said land, to secure the payment of $50,000 with interest thereon, evidenced by negotiable promissory notes of said Coale, executed and delivered by him to said Quality Realty Company; and that thereafter, to-wit, on the 27th day of May, 1909,

said Ralph W. Coale, at the instance and request of plaintiff and the Excelsior Realty Company, conveyed said land, subject to said deed of trust, to plaintiff; and, that upon receiving said conveyance of said land from said Coale, plaintiff executed and delivered to said Ralph W. Coale the note contained in plaintiff's Exhibit A, and also to secure said note contained in said exhibit, plaintiff executed and delivered to said Coale a third deed of trust on said land, together with a deed of trust on other property of the plaintiff;

"And if the jury believe and find from the evidence that said conveyances by said Quality Realty Company to said Coale and said Coale to plaintiff, and the payment by the Excelsior Realty Company of said $40,000 to said Quality Realty Company, and the execution and delivery by plaintiff of her promissory note for $60,000 to Ralph W. Coale, and the deeds of trust to secure the same, were all had and done by plaintiff and the Excelsior Realty Company, with the intent and purpose only of enabling the plaintiff to complete her purchase of said land from the Quality Realty Company; and that there was no purpose or intent, in any event, on the part of either of said parties to the transaction, that the said Mersman and Excelsior Realty Company, or either of them, either in their own name or in the name of some other person, should purchase said property; and that said Coale thereafter endorsed said note with the words 'Without recourse on me,' and delivered the same to the Excelsior Realty Company, and that said Coale had no financial interest in said land or the purchase price thereof, then the court instructs you that said payment of said $40,000 by said Excelsior Realty Company to the owners of said land, as aforesaid, was a loan to the plaintiff, for the use of which the Excelsior Realty Company could not legally charge plaintiff more than eight per cent per annum;

'And if the jury believe and find from the evidence that, on or about the 29th day of May, 1909, said note of plaintiff for $60,000 was purchased by Simon Van Raalte, and that on or about the 28th day of March, 1910, plaintiff paid or caused to be paid to said Van Raalte

the principal of said note, to-wit, the sum of $60,000, and that plaintiff either paid or caused to be paid to said Van Raalte the sum of $3,000 as interest on said note, then your verdict in this case should be against defendant, Simon Van Raalte, in the sum of $21,000, provided you further find that said Van Raalte, before buying said note, had actual knowledge of the fact that said note was given by the plaintiff for the loan of only $40,000 (if you find that the transaction between the original parties constituted a loan under the prior part of this instruction).

"2. The court instructs the jury that it has ruled that there can be no recovery by plaintiff against defendants Mersman and Excelsior Realty Company, and that as to said defendants, plaintiff has taken a nonsuit.

"The court instructs you that you should not from this action of the court draw any inference, either one way or the other, as to the liability or non-liability of the defendant Van Raalte, but as to the defendant Van Raalte the court submits the case to you upon the other instructions given you."

The court gave the following instruction on behalf of respondent:

"The court instructs the jury that unless you believe from the evidence that the transaction, if any, between the plaintiff and defendant, Excelsior Realty Company, was a loan of money by said Realty Company to the plaintiff, plaintiff is not entitled to recover against the defendant Van Raalte, on the second count of her petition.

"The court instructs the jury that in the second count of the petition, plaintiff admits that her original transaction in relation to the sixty thousand dollar note described in evidence was with defendants Mersman and Excelsior Realty Company, and not with defendant Van Raalte, but that plaintiff seeks by said count to hold defendant Van Raalte liable on the ground that he purchased said note with actual knowledge that it was executed in consideration of a loan of forty thousand dollars. The court instructs you that the burden of proof is upon plaintiff to establish such actual knowl-

edge on the part of Van Raalte by the preponderance of the evidence. The court therefore instructs you that if you find plaintiff has failed by the preponderance of the evidence to establish that Van Raalte purchased with actual knowledge that the said note was executed for a forty thousand dollar loan, then your verdict must be in favor of the defendant Van Raalte, and against the plaintiff on the second count of this petition."

On its own motion the court gave instructions as to the credibility of witnesses and a numerical verdict.

I. The motion for a new trial was sustained, as specified by the trial court, for the following reasons: (1) "The exclusion of evidence offered by defendant to show that James J. and not Margaret A. Quinn was the real party in interest." (2) "Error in the giving of instructions."

The respondent, as well as the appellant, have filed an abstract herein. Except to impose upon the court the necessity of added labor in the examination of the facts, there is no reason apparent for this duplica-

Abstract.    tion of the record. In the examination we have felt impelled to make of these abstracts, we find that each presents the controverted matter at issue.

Instead of the trial court erring in the exclusion of the testimony, it was exceedingly liberal in permitting its introduction. Much of the record is taken up with discussions of counsel as to the character

Exclusion    and extent of testimony to prove the ab-
of Evidence. sence of plaintiff's interest in the matter at issue. Whether the testimony thus discussed was oral or documentary, we have searched the record for evidence of direct offers of same, which would have enabled the trial court to rule intelligently thereon, and the respondent to preserve and submit exceptions to such ruling. In order to preserve an available objection to the exclusion of testimony, its offer must be made at the time. If documentary, the instrument itself should be offered; if oral, the court should be informed as to the evidence proposed to be given by the witness. Where there is nothing to indicate whether a ruling in regard to testimony will affect the merits of

the case, we should not interfere.   In the absence of any
evidence of error none will be presumed.   To interfere
with a judgment regularly entered, in order that a re-
hearing may be had upon a mere general statement of
errors, in the absence of some showing as to their ma-
teriality, would, as we said in substance in Powell v. Rail-
road, 255 Mo. l. c. 466, ''be a hazardous and foolhardy
thing.   When the case goes below under such circum-
stances, the evidence elicited at the trial on the same
question may turn out to be worth nothing, whereby
justice will suffer from our action and the courts be
brought into reproach.''

Especially is this true where the testimony, if ad-
mitted would have been insufficient to establish the de-
fense relied on. [State ex rel. Farwell v. Leland, 82 Mo.
l. c. 265.]

As illustrative of the correctness of this conclusion,
it is only necessary to state somewhat in detail the rul-
ings of the trial court in regard to the testimony to
which defendants preserve exceptions.

On cross-examination, plaintiff was asked if the sale,
referring to that of the Forsyth tract, was not worked
up very effectively.   Plaintiff's objection to this in-
quiry was sustained, and the defendants excepted.   No
suggestion was made as to what answer was expected,
nor any intimation given as to its materiality. An affirm-
ative answer, if permitted to have been given, would
have thrown no light on the subject.   Plaintiff was asked:
''What do you say in connection with your household
expenses, your husband had no money, has he?   He has
not a cent, has he?   Don't you know he has not got a
dollar? Did you ever hear of the case of Carson v. Quinn,
and a judgment against him for $2500?''   The plaintiff's
objection to these inquiries was sustained. This charac-
ter of examination, evidently for the purpose of showing
the impecunious condition of the plaintiff's husband, was
but a repetition of other examinations of witnesses in
which like questions were propounded and answered, not
necessarily to be detailed here, because the defendants re-
ceived whatever benefit might accrue from the facts eli-
cited, and hence could not claim error because of the re-

fusal of the trial court to permit a repetition of the same. On further cross-examination, plaintiff was asked if she did not own the Forsyth tract, and answered, yes. The further inquiry was made as to whether this was not true as to all property that stood in her name. Plaintiff's objection to this inquiry was sustained. The materiality of this testimony does not appear on its face, and no suggestion was made as to the answer expected. The only other property the plaintiff had in her name was that on Laclede Avenue and 9th and Morgan Streets. Proceeding in this same line of cross examination, the plaintiff was asked whether or not her husband had not received from her the proceeds of the sale of the property when it was made. Plaintiff's objection to this inquiry was sustained, but no suggestion was made of any character to determine what the answer might be. It had already been testified by the plaintiff that her husband had no interest in the Forsyth tract, and that he drew no money for her which had been deposited in the Trust Company admitted to have held all the proceeds arising from the sale of the property.

James Quinn, the husband of the plaintiff, on cross-examination, was asked: "Did you tell Mersman you wanted this title taken in your wife's name because there was a fellow who was going to get judgment against you, or had judgment against you?" The sustaining of an objection to this testimony was proper. The only ground on which it was sought to introduce it was to affect the credibility of the witness. The same inquiry had been made of him and answered in different language, and the testimony excluded was, therefore, simply in the nature of a repetition. Mersman had stated in his cross-examination what the plaintiff's husband had said to him in this regard, and it had not been attempted to question this statement, whatever evidentiary effect it may have had, other than by Mersman himself, who stated that "Quinn never told him that he was carrying property in his wife's name, and he explained to him why the transaction was made in the manner it was." Further effort was made by defendants to have plaintiff's husband testify concerning transactions oc-

curring about six years before the transfer of the Forsyth tract. These inquiries are not in the record, and it is impossible to determine their nature. There is, therefore, no such preservation of the alleged error as to authorize our interference. Many other inquiries were made by counsel for defendants which were excluded by the court. They were all intended to emphasize the alleged indigent condition of the plaintiff's husband or to affect his credibility. Except by remote inference the materiality of this character of testimony is, under the facts in this case, doubtful. Much other testimony of like nature having been admitted, the defendants were not deprived of whatever probative force it had. There is, therefore, no substantial ground for complaint on this account.

In regard to the exceptions preserved to the proposed offers of documentary evidence, it is sufficient to say that not a single one of these papers were actually offered in evidence, and excluded. The rulings thereon cannot constitute such error as we are authorized to review.

II. In sustaining the motion for a new trial, the court held further that it erred in not giving an instruction embodying the following: "If the jury find that Mersman and the Excelsior Realty Company intended to advance the $40,000, necessary to acquire title to the property, whether Quinn elected to purchase it or not, and that Quinn should in truth and in fact have five days' time within which to determine whether or not he would re-purchase the property, and that he was in fact allowed that time, although he may not have availed himself of it, then the transaction did not constitute a loan, and the jury should so find." In the discussion as to the propriety of this proposed instruction, it is well to review in outline the facts in the case.

**Instructions.**

Plaintiff had a contract for the purchase of the Forsyth tract with the Quality Realty Company, the agent of the owner, whereby she obligated herself to

purchase the tract within thirty days. While this contract was in force, the Excelsior Realty Company, under an agreement with plaintiff's husband, paid the owner of said tract $40,000 on the purchase price of same, in conformity with plaintiff's contract. Contemporaneously with this payment, the title was vested in the plaintiff. A conduit, Ralph W. Coale, was employed in the transfer, he taking the title from the owner and transferring same to plaintiff. Coale had no interest in the transaction other than as an intermediary. It is not otherwise contended; on the contrary, it is conceded by respondent that Coale was acting "for the convenience of Mersman and Quinn." Proof of these facts is almost entirely documentary. It consists of plaintiff's contract of purchase of the land; the Excelsior Realty Company's check for $40,000, paid to the owner of the land; the deed from the owner to Coale, the conduit; the deed from Coale to the plaintiff; the note of plaintiff for $60,000 to Coale, indorsed by the latter without recourse upon its delivery to the Excelsior Realty Company; the receipt of the Excelsior Realty Company showing the payment of the $40,000 to the owner of the land and that the title was to pass through Coale to plaintiff, and that this money was not to be paid to the owner of the land until the plaintiff's note and deed of trust had been delivered to the Title Guaranty Trust Company. The date of all of these transactions was May 25, 1909, and the payment of the money and the passing of the title to plaintiff was simultaneous. These instruments, where required to be recorded, were filed chronologically in the order of their execution, as if, which was doubtless true, their manual delivery to the recorder was by the same person.

All of this proof lends color to no other reasonable conclusion than that the purpose of this entire transaction was to vest title to the property in the plaintiff; and that it was never the intention of Mersman and the Excelsior Realty Company to acquire the title whether the plaintiff's husband elected to purchase it under the terms of his contract with Coale or not. As the documents show, the property was purchased under and in

accordance with plaintiff's contract; the transfers made in relation thereto being simultaneous, indicated one transaction; the deed to Coale was, as is admitted, a mere convenience; the contract of plaintiff's husband with Coale was made May 27, 1909, two days after the deed from Coale to plaintiff had been made and executed and the title to the land had vested in the plaintiff. Mersman testified that he had bought this property for the plaintiff at her husband's request, from which the legitimate conclusion follows that the $40,000 paid to the owners of the land was for plaintiff. Further than this, it was conceded by counsel for respondent in the argument in support of the motion for a new trial, that it was never the intention of Mersman and the Excelsior Realty Company to acquire title to the property. Judge Sale's language in this regard we have set out at length in the statement. When the evidence conclusively shows, therefore, as it does here, that the $40,000 was advanced to acquire the property for the plaintiff and the further fact appears that the contract upon which it is sought to base the instruction claimed to be proper by the trial court was not made until after plaintiff had acquired title to the property, the giving of the proposed instruction would clearly have been error in authorizing the jury to act upon an assumption of power in Mersman and the Excelsior Realty Company which had ceased to exist.

The trial court held affirmatively that the instructions given correctly stated the law applicable under the facts, except as to the hypothesis concerning the effect of the alleged contract of plaintiff's husband with Coale. This we have disposed of by showing that it could not properly be considered as a determining factor in the case.

Respondent contends, however, that plaintiff's instruction numbered one, as given, was erroneous. Every fact in this instruction relating to a loan, or whether or not the transaction constituted a loan, was admitted by respondent. The only fact not admitted was as to whether the transfers from the Quality Realty Company to plaintiff, through Coale, and the payment of the

money by Mersman to the Quality Company were had and done with the intent and purpose only of enabling the plaintiff to complete her purchase of the land and that there was no purpose or intent on the part of either of the parties that the said Mersman and the Excelsior Realty Company should purchase said property. No tenable objection can be urged to this portion of the instruction. It clearly and fairly presents the issue in regard to this phase of the transaction which, if found to exist, as hypothesized therein, renders the transaction a loan, which is best defined in Freeman v. Brittin, 17 N. J. L. 191, l. c. 206, as follows:

"It is not necessary in order to constitute a loan, that there should be in very terms, an application to borrow, or an agreement to lend. Every advancement of money, for the accommodation of another, to be repaid to the person making the advance, by the person receiving it, or by any person for him, or by or out of his funds, is literally and legally, a loan of money."

This definition is concretely applied in the last paragraph of this instruction, and after a statement of all the pertinent facts necessary to the guidance of the jury, they are told that a recovery can not be had unless they find that the transaction between the Excelsior Realty Company and the plaintiff was a loan.

The instruction covers the whole case and negatively embraces all of the legitimate legal defenses. This is all that is required (Enloe v. Foundry Co., 240 Mo. l. c. 449). If in this case an instruction had purported to cover the whole case and had ignored legal defenses, it would have been erroneous. This is not the case, however. After stating hypothetically the facts which will sustain defendants' liability, such other co-existent facts which show no liability, are sufficiently stated. The effect of the instructions, therefore, not only those given on behalf of the plaintiff, but those for the defendant, ignore no important issues of fact in the case. This being true, no substantial ground exists for sustaining the motion for a new trial on account of errors in plaintiff's instructions.

Respondent contends that error was committed in refusing a number of instructions asked by him. We will not further burden this opinion with a presentation of these instructions *in haec verba,* unless it becomes necessary to a clear understanding of our rulings. The first and second were properly refused because they submitted issues of which there was no evidence; the third singles out parts of the evidence, giving weight to same not justified by the law or the facts. It states that Van Raalte, the respondent, was authorized to rely upon the recitals of the deed of trust and the certificate of title, provided he did not have actual knowledge that the note was given for a loan of money. Without that knowledge it was immaterial whether or not he relied upon the recitals of the deed and certificate. The converse of this proposition is that although he had actual knowledge that the note was given for a loan, he could nevertheless rely upon the recitals of the deed and certificate. This does not correctly state the law, is confusing, and was properly refused. The fourth instruction was a duplicate in meaning, but in other words, of respondent's instruction given. The fifth assumed that the acquisition of the note by Van Raalte constituted a sale to him by the Excelsior Realty Company. This was an assumption of a controverted fact. Van Raalte and his co-defendants claimed that there was a sale of the note, but plaintiff insisted that there was not a sale. Under this state of facts, the instruction was properly refused. The sixth was properly refused because it is based solely upon the first count of plaintiff's petition, upon which the case was not submitted to the jury.

III. It is contended that the granting of the new trial was authorized on the ground that Quinn had committed perjury. This contention has reference **Perjury.** more particularly to his statements in regard to Van Raalte's knowledge of the nature of this transaction. He was contradicted in this regard by Van Raalte and Mersman. The jury gave credence to his testimony and rejected theirs. We are bound by

their finding. It is, therefore, unnecessary to discuss this matter, and we are thus enabled to avoid any comment upon the propriety of animadversions upon this witness's personal character indulged in by counsel for respondent.

IV. In reference to the complaint that the trial court erred in admitting testimony as to an alleged statement of Judge Lubke in regard to the nature of transactions similar to the one under review, we have not set the same out in the statement because we did not consider it material. It is only found in the evidence in an incidental way. Certainly, so long as Mersman and the Excelsior Realty Company were parties to the proceeding, this designation of the transaction by Judge Lubke was admissible as to them. It is admitted to be by counsel for respondent. If counsel had desired that the effect of this remark might be limited to Mersman and the Excelsior Realty Company, they should have asked an instruction to that effect. Having failed to do so, they will not, on this account alone, be heard to complain. Where instructions given are correct and do not ignore any material issues, defendant cannot complain because they do not in detail present his theory of the case. He should ask instructions presenting his theory. [Gordon v. Park, 219 Mo. 600; Matthews v. Ry. Co., 142 Mo. 645.] In our opinion, however, the evidence was admissible as to Van Raalte. The record discloses that he was negotiating for this note before it had been delivered to Mersman, and it was a legitimate question of fact for the jury to determine whether or nor Mersman had not told Van Raalte the fact, among others, as to Judge Lubke's characterization of the transaction. Mersman says he "told Van Raalte all about the facts of this deal." The relations they sustained towards each other, especially in regard to this matter, furnishes a strong presumption that this fact was communicated to Van Raalte, and if so, he was not harmed by the introduction of the same in evidence; especially is this true when it was incidentally introduced, and not in a manner calculated to in any wise in-

jure the respondent. A more complete answer to this contention is that if plaintiff's first instruction correctly stated the facts necessary to constitute a case of usury, then, whatever remark may have been made by an eminent lawyer in characterizing the transaction affords no ground of complaint on the part of the respondent.

V. The absence of prejudicial error having been shown, it remains to be determined whether there exists substantial facts authorizing a recovery.

Plaintiff's actual interest in the subject-matter of the transaction, has, we think been sufficiently shown. She executed the note as evidence of a payment of a part of the purchase money, and gave the deed of trust to secure the payment of same. She was possessed of the complete legal title to the property. A recovery by her in this proceeding will fully protect the defendant if another action be brought against him upon the same state of facts. There facts authorize the conclusion that the plaintiff is the real party in interest. Defendants' contention that the husband of the plaintiff was the real party in interest is not borne out by the evidence. If it be true, of which there was no testimony, that plaintiff had a collateral agreement with her husband by which he was to be entitled to some portion of the proceeds arising from the sale of the land, this would in no wise affect her status as the real party in interest. The land was hers, and she was entitled to sue to recover any payment she had made in excess of what was legally due from her, despite any collateral agreement, whether in the nature of an assignment or otherwise; and upon the recovery of a judgment by her, as in this case, the defendant would by its payment be completely protected from any proceeding based upon the same state of facts irrespective of any interest the husband might have in the matter. [Helm v. Albers, 244 Mo. l. c. 46; Gay v. Orcutt, 169 Mo. l. c. 406; Guerney v. Moore, 131 Mo. l. c. 668; Chouteau v. Boughton, 100 Mo. l. c. 406; St. James Co. v. Secur. Tr. Co., 81 N. Y. Supp. 739, 178 N. Y. 560.]

A loan is a necessary requisite to the existence of usury. In addition to the very full definition of a loan in Freeman v. Brittin, supra, it may be said to be the existence of a contract whereby one party transfers to another a sum of money which the other agrees to repay absolutely, together with such additional sums as may be agreed on for its use (39 Cyc. 926 and notes). Plaintiff made the note herein in the execution of the contract for the purchase of the land. Defendant acquired the note with knowledge of the facts under which it was made. The intermediate transfer to Coale did not affect the legal character of the transaction, which was that of a loan. The note evidenced a $60,000 debt, for which only $40,000 was paid. In the settlement of same, plaintiff paid the full face of the note, and was required to pay interest thereon. This was usury, more profit being thereby paid to the lender than was authorized by law. No matter what form such a transaction may assume, or with what ingenuity it may be concealed, it is nevertheless a violation of the statute. [Sec. 7182, R. S. 1909; Mo. R. E. Syn. v. Sims, 179 Mo. 679; White v. Anderson, 164 Mo. App. 135; Coleman v. Cole, 158 Mo. l. c. 260; Machine Co. v. Tomlin, 174 Mo. App. l. c. 514; Kreibohm v. Yancy, 154 Mo. l. c. 85.]

There being present the necessary elements to authorize this action, and no material error appearing, the order granting a new trial is set aside with directions to the trial court to reinstate the verdict as of the date of its rendition. All concur.

# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE.

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1918.